UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| ALEXANDER KALLMEYER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 24-051-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| SAMUEL MATHEWS, | ) | **MEMORANDUM ORDER** |
| | ) | |
| Defendant. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Paul Hill, Plaintiff Alexander Kallmeyer's attorney, has filed a moved to alter, amend, or vacate the Court's prior contempt finding. [Record No. 57 (citing Fed. R. Civ. Pro. 59(e)] Hill claims that Court placed him in criminal, rather than civil contempt. He asserts that there was no reasonable basis for finding him in criminal contempt. His motion will be denied because the Court found him in *civil* contempt, properly imposed a remedial sanction, and provided him an opportunity to purge himself of the contempt.

**I.**

Following *voir dire*, the Court announced the jurors who were dismissed for cause and directed the rest to return to the jury room when a prospective juror announced that he recognized a gentleman (the city solicitor) who had recently entered the courtroom and was seated with the defense. The Court directed the prospective juror to approach the bench. The attorneys were present when the prospective juror explained that he knew the city solicitor as the two had served together on a local athletics board of directors. The Court noted that it did not believe he (i.e., the city solicitor) had any involvement in the case and that he would not

be called as a witness.  The undersigned then asked the prospective juror whether knowing the city solicitor would affect his ability to be fair and impartial to both sides if selected.  The prospective juror confirmed that it would not affect his ability to be fair and impartial.

Satisfied with his response, the Court noted that the attorneys may want to ask additional questions.  Rather than ask any questions of the prospective juror, Hill volunteered that the city solicitor was involved in the case and was present at a deposition.  But rather than stop there, he revealed that the city solicitor was *involved in settlement discussions*.  Defense counsel immediately objected to Hill mentioning settlement discussions in the presence of the prospective juror.  Hill then attempted to withdraw his statement, and the undersigned informed him that it was too late.  The prospective juror was notified that he too would be excused from the remaining jury pool.

Once the prospective and excused jurors left the courtroom, the Court addressed what occurred during the sidebar.  Then the undersigned provided an opportunity for Hill to explain why he should not be held in summary contempt for poisoning the well for that prospective juror by discussing settlement negotiations.  After apologizing, Hill offered that it was a mistake but asserted that he did not believe it was appropriate for the prospective juror to have any input in the case.  The undersigned determined that Hill's conduct was clearly intentional and that his excuse was insufficient; therefore, Hill was held in summary contempt, indicating that the penalty for the contemptuous conduct would be addressed once trial was over.

After the jury returned a defense verdict and was dismissed, the Court turned to the contempt issue.  The undersigned directed Hill to file notices in all his pending federal cases in this district, notifying the judges that he was held in contempt and the reason for the Court's determination.  Hill was also instructed to file those notices with this Court so that it could

determine whether his conduct was adequately described such that he would have purged himself of the contempt. This remedy was selected because it would put those other judges on notice of Hill's improper conduct during *voir dire*, which would allow those courts to take that conduct into consideration should Hill mistakenly poison the well for future prospective jurors, or engage in any other rule violation during trial. But rather than purge himself of the contempt as provided for on July 23, 2025, Hill elected to challenge the Court's directive. [Record No. 57] More specifically, he requests that the Court vacate its summary contempt finding and remove all references to it from the record. *Id.* at 4.

## II.

"Federal courts derive their contempt power from 18 U.S.C. § 401." *Clapper v. Clark Dev., Inc.*, 747 F. App'x 317, 321 (6th Cir. 2018). The statute provides that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as ... [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). Contempt can be either civil or criminal. "'The distinction between civil and criminal contempt lies in the purpose of the court's mandate.'" *Clapper*, 747 F. App'x at 322 (quoting *Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir. 1994)). "'[C]ivil contempt sanctions are designed to enforce compliance with court orders and to compensate injured parties for losses sustained.'" *Id.* (quoting *Downey*, 30 F.3d at 685). Whereas "'[c]riminal contempt sanctions . . . are imposed to vindicate the authority of the court by punishing past acts of disobedience.'" *Id.* (quoting *Downey*, 30 F.3d at 685). And the "'purpose and character of the sanctions imposed, rather than to the label given to the proceeding by the court below'" determine whether the trial court

proceeding was for criminal or civil contempt. *Id.* (quoting *United States v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1401 (6th Cir. 1991) (citations omitted)).

This distinction matters because criminal contempt implicates significant due process requirements and proof beyond a reasonable doubt. *Id.* (citing *Downey*, 30 F.3d at 685–86; *In re Smothers*, 322 F.3d 438, 442 (6th Cir. 2003); *Cooke v. United States*, 267 U.S. 517, 537 (1925); Fed. R. Crim. P. 42(a)). But in "civil contempt proceedings, the procedural protections provided for in Rule 42(a) do not apply, and proof need be only by clear and convincing evidence." *Id.* (citing *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015)). "Generally, civil contempt proceedings are summary in nature. *Miller v. Carson,* 550 F.Supp. 543, 545 (M.D. Fla. 1982). The full panoply of evidentiary and procedural safeguards of criminal proceedings or trial need not be employed. *In re Grand Jury Proceedings, Hellman,* 756 F.2d 428, 430 (6th Cir. 1985)." *Nabkey v. Hoffius*, 827 F. Supp. 450, 452 (W.D. Mich. 1993), *aff'd sub nom. Nabkey v. 61st Dist. Ct.*, 79 F.3d 1148 (6th Cir. 1996). Civil contempt proceedings may be instigated *sua sponte* or by the wronged party. *See generally id.*

Contempt sanctions are to be proportional to the wrongful conduct. Indeed, courts have a wide range of latitude in setting sanctions for civil contempt. However, the court is obliged to use the "least possible power adequate to the end proposed." *Spallone v. United States*, 493 U.S. 265, 280 (1990). "The magnitude of the sanctions imposed should be assessed by weighing the harm caused by noncompliance, 'and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Glover v. Johnson*, 199 F.3d 310, 312 (6th Cir. 1999) (quoting *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947)). Indeed, there are numerous penalties "'other than criminal contempt' that may be levied against

attorneys whose conduct falls below the standard of what is expected from members of the federal bar." *Clapper*, 747 F. App'x at 326 (quoting *In re Smothers*, 322 F.3d at 442).  For example, a court may recommend that the relevant bar association issue a public reprimand against the attorney "or post a public reprimand directly on the court's website." *Id.* (quoting *In re Smothers*, 322 F.3d at 443).  The United States Court of Appeals for the Sixth Circuit has "also suggested that 'the imposition of a fine unaccompanied by a formal sanction could be used' as a penalty for wasting court resources "'without resorting to a finding of criminal contempt.'" *Id.* (quoting *In re Smothers*, 322 F.3d at 443).

### III.

This Court found Hill in civil contempt as evidenced by the remedial nature of the imposed sanction and the fact that Hill could purge himself of the contempt.  *Clapper*, 747 F. App'x at 322; *Turner v. Rogers*, 564 U.S. 431, 442 (2011) (citing *Hicks v. Feiock*, 485 U.S. 624, 633 (1988) ("And once a civil contemnor complies with the underlying order, he is purged of the contempt and is free.")).  For Hill, there was no reason why his concerns could not have been raised *outside the presence of the prospective juror*.  As noted, this poisoned the well for this prospective juror and functionally allowed the plaintiff an additional preemptory strike.  When the undersigned gave Hill an opportunity to explain why he should not be held in contempt, he justified his actions by asserting that he did not believe it was appropriate for the prospective juror to have any say in the case.  And he treated his divulging about settlement discussions as minor.[1]  But significant Court resources are expended to have any prospective juror brought in for jury duty.  And Rule 408 of the Federal Rules of Evidence explicitly

---

[1] While he now argues that he planned to use one of his preemptory challenges to exclude that juror—he made no such proffer during trial.  [Record No. 57 at 4]

prohibits any reference to or discussion of settlement negotiations to any juror (or prospective juror).

Here, the Court did not pose a monetary penalty for the waste of judicial resources in poisoning the well with that prospective juror, did not take away any of the plaintiff's preemptory challenges, or report Hill to the bar association for public reprimand. Instead, Hill was provided a chance to purge himself of the contempt by filing a notice in his other active federal court cases in which he is the attorney of record[2] so that those judges were on notice of this Court's contempt finding. This remedy would allow the other judges to take into consideration Hill's behavior during this trial should any future concerns arise in those cases. In short, Hill was found in civil contempt and offered a chance to purge himself; he alone "carries the keys of his prison in his own pockets" and is free to do with them what he so wishes. *Turner*, 564 U.S. at 442 (citation modified).

## IV.

Being sufficiently advised, it is hereby **ORDERED** as follows:

1.    Attorney Paul Hill's motion for reconsideration [Record No. 57] is **DENIED**.

2.    Considering attorney Hill's failure to comply with the Court's earlier directives, a hearing regarding this issue will be held on **Monday, October 27, 2025**, beginning at the hour of **11:00 a.m.**, to determine whether additional sanctions should be imposed. Such additional sanctions may include referral to the Kentucky Bar Association for further action.

---

[2] The minute entry order from July 23, 2025, specified that Hill "was advised that he could purge himself of contempt by filing a notice in all active cases in this district in which he is counsel of record, explaining the Court's contempt finding and the basis for that finding. A copy of the notice also should be filed in the record of this proceeding. If the undersigned finds that Hill has adequately explained his contemptuous conduct, no further sanctions will be imposed."

Dated: October 3, 2025.



Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky